May it please the Court, good morning, Your Honors. My name is John Varga. I will be speaking today on behalf of the appellant, Mr. Hugo Vallejo-Romero. Your Honors, in this case, Mr. Vallejo-Romero had lived in the United States for over 12 years at the time he was detained in 2002 following a, excuse me, brief departure and return to the United States. And on his first attempt to reenter, he was detained and sent back to Mexico. A couple days later, the same thing happened. He attempted to reenter and was returned. The third time, which was a couple more days later, four, I believe, this time he was placed in removal proceedings. A notice to appear was issued, and he was sent before an immigration judge. The removal statute that applied to him is Section 1225B1, is that correct? Yes, Your Honor. And as I read the words of that statute, it appears to be mandatory. So if the situation fits within it, then it's mandatory that the person be removed. The expedited removal statute is quite detailed. And if you, I refer to 8 CFR 235.3, Section B, Paragraph 2, Subsection I or I. There is a specific procedure, and it's a detailed, document-intensive procedure that the Immigration Service has to follow when conducting an expedited removal proceeding. Briefly, they have to, there has to be an I-867AB form, which is the sworn statement form filed. The examining officer shall read the information contained on the form I-867A. After that, they have a I-867B, which will contain the alien's responses to questions that are posed to him. The examining officer has to advise the alien of the charges against him, and this has to be done on form I-860, a notice in order of expedited removal. The alien is given an opportunity to respond to this, and after obtaining supervisory concurrence in the removal, then the removal is effected. But over all this, and especially to Mr. Vallejo Romero's case, the examining officer has to inquire whether the alien has been present in the United States, unlawfully, for a continuous period of two years or more. And in this case, there is no record. The Immigration Service submitted nothing into record of the first two instances where he was detained. The only evidence that the Immigration Service submitted was that Exhibit 4 in the record, and it was the I-213, which is the record of the reportable alien. And that was for the third detention on July 7th. Now, Your Honors, on that form, Mr. Vallejo readily admits that he's been in the United States living continuously for 12 years. It's noted in two different areas of that form. Now, had this, these interviews the first two times been conducted properly, and we don't know because the Immigration Service never submitted anything into record, Mr. Vallejo, there's nothing to indicate that Mr. Vallejo would not have readily admitted that he's been in the United States for 12 years, that he has two kids, that he's working, and that he made a brief departure and he's returning to his kids, as he indicated in the 213 on July 7th or July 8th. This wasn't done. And I thank your Honors for having the parties brief the Ibarra case, because the Ibarra case is analogous in the sense that the documentary evidence was not sufficient. Why do any procedural irregularities in the expedited removal hearing have any effect on whether the expedited removal, which took place, broke the continuous physical presence? Because there was an option. And this is where we get into our equal protection argument. Well, that's why I asked you the question I asked you, because I don't see in this statute where there's any kind of option. The language of the statute is, if you fit in this category, then you shall be removed. There's no option. Well, the option, sure, Your Honors. And I would just submit that the option comes when the alien first applies for admission, when he's first detained. The Immigration Service has the option of doing a number of things. There is a simple return, which they do quite regularly. There is administrative voluntary departure. And there is expedited removal. And there's also, what happened to him on the third occasion, being placed into proceedings. There are four separate things. There are four distinct things that could have happened. Why isn't that totally within the discretion of the executive branch of government to decide which? Well, it is, Your Honors. And it is also incumbent upon them to follow the statutes of the what's stated in the expedited removal procedures. And this wasn't done in this case, in the first two incidents. We don't know. Mr. Vallejo submitted a declaration saying that he did not he would not have accepted any kind of voluntary return or expedited renewal. He would not have consented to that had he known that this would have interrupted his 12 years continuous physical presence. This was submitted with the motion to reopen. And there's nothing in here to indicate otherwise. When he was finally placed into proceedings in July 2002, he submitted his application for cancellation of removal that same month, complete with documentation of his physical presence in the United States every single year. So are you saying that he should have been given the opportunity to refuse an expedited removal order? Is there any statutory or regulatory basis for that? To remove an order to oppose an order? No, Your Honor. But by the statute requiring an inquiry as to his physical presence in the United States, and his ready admission on the I-213, and his own declaration saying that he would not have consented to something like that, we can see that on that first time that he was detained, he should have been placed into proceedings. He should have been. Could I ask you one more question? Sure. And that is, is there anything before us other than the denial of the motion to reopen? Isn't that the only thing that has been petitioned from here? Yes, Your Honor. And our standard of review is abusive discretion? Yes, Your Honor. And the BIA did go back to the original decision in denying it and saying that his heart was broken or whatever that was. So in that sense, it all is tied together. The motion to reopen was brought and it brought the new evidence, the new evidence of his daughter being born with a hole in her heart. And that's his third child. What you have here is analogous to this Court's holding in Ramirez-Landeros. It is a memorandum decision. It's not precedent. But it's almost exactly on point with this case. In Ramirez-Landeros, the alien had, the Mexican national, had 11 years' physical presence in the United States, was returned by expedited removal on two occasions, days apart. And then on the third, same with Mr. Vallejo, was placed into proceedings. But in that case, the immigration judge heard all the evidence of cancellation and then said, based on the physical presence having ended at the first removal, that they were ineligible. And this Court remanded the case for an adjudication of the application for cancellation. In our case, the immigration judge didn't even get that far. The immigration judge pre-terminated the application for cancellation, just wouldn't even see it. There was no testimony taken of Mr. Vallejo. The application was just completely discarded, only on the basis of time. Would you like to save a little bit of time for rebuttal? You have about a minute. Yes, Your Honor. Yes, I would. Thank you. Thank you. We'll hear from the government. Good morning. May it please the Court, my name is Marion Guyton. I'm with the U.S. Department of Justice, and I'm representing the Respondent, the Attorney General, in this matter. What we need to first emphasize is that this petition for review is of the board's denial of the motion to reopen. Petitioner is attempting to take a backdoor approach to challenge his expedited removal in this petition for review of the denial of his motion to reopen. This is not permissible. The expedited removal procedures can only be challenged in a habeas petition. We're not dealing with the expedited removal. What we're dealing with here is the board's decision to deny the motion to reopen. In that motion to reopen, petitioner sought to have the proceeding reopened in order to get into the evidence new facts based on the birth of a new U.S. citizen daughter. What the board did is it decided that it didn't even reach the discretionary hardship determination, because it went back and it used N. Ray Romeles-Alcotti, which dealt with administrative voluntary departure, to indicate that in this case, when there's an expedited removal, then that's an even stronger case. Now, admittedly, the board's decision, as you said in the government's answering brief, misphrased. They may have mischaracterized what went on here. This was not an administrative voluntary departure. And contrary to the claims made by Petitioner's Counsel, there is no option in expedited removal. Well, as I understood of your opposing counsel's argument, it wasn't necessarily that he had a panoply of options, but that the government had several routes that it could have chosen, and that it chose one that gave him the fewest rights, and that that's not okay. At least that's how I understood the essence of his argument. Did the government itself have options as to how to deal with him? Judge Graber, you're absolutely correct. The applicable provisions were 8 U.S.C. 1225B1. Under those provisions, an alien who presents himself at the border and is inadmissible is placed in expedited removal. There is no burden of the... Provided that they find the person at the appropriate time and place, presumably. At the border, a port of entry. Right. And what happened here is he presented himself and falsely claimed United States citizenship and was not in possession of valid entry documents. And the burden is not on the border officials to take any affirmative steps. The statute and the regulations make it clear that the burden is on the alien to establish his... The fact that he has been here over two years. In this case, he did not do so. The immigration officials then correctly put him in expedited removal. And once again, I want to emphasize, those procedures have been upheld in the Ayla case versus Reno. The only place that that can be challenged was in, according to the statute, the judicial review of the constitutionality of the expedited removal had to be before the U.S. Court of Appeals for the District of Columbia. And in the Ayla case, those provisions, the constitutionality was upheld. And once again, I want to emphasize, since Petitioner's Counsel is trying this backdoor challenge of his expedited removal, that can only be challenged in habeas, not before this Court. This Court does not have jurisdiction over that. But on the question about breaking the continuous physical presence, Ramallah's al-Qaeda and our cases have looked at the voluntary departure orders, and they've mentioned removal orders. But there's nothing specifically that I found or that was cited dealing with whether an expedited removal order breaks a continuous physical presence, or whether it's more like a turnaround, as we saw in Tapia. Could you address that point? You're absolutely correct. There are no provisions. This is the interpretation, if you look to the immigration judge's decision, and the reasoning that the immigration judge employed was that if an alien is forced to depart in lieu of accepting a voluntary administrative departure, then there's an even stronger case when that alien is removed based on an expedited removal. There's no process, or the process is very streamlined for expedited removal order. Does that make it different than a removal order under just general removal proceedings, or from a voluntary departure scenario where there is that contract that was indicated in the cases? Well, one of the discourse decisions is analogize the process of accepting administrative voluntary departure in lieu of a removal with a plea bargain. There is no plea bargain in expedited removal. Based on the statutes and the government's regulations implementing the statute, there was no choice. The immigration official who apprehended and questioned the petitioner made a determination that the petitioner should be placed in expedited removal. The third time he was placed in removal proceedings because, and I'd like to call attention to the regulations at 8 CFR 235.3, subparagraph 3, additional charges of inadmissibility. In the expedited removal process, the service may not charge an alien with any additional grounds of inadmissibility other than section 212A, 6C, or 212A7 of the act. If an alien appears to be inadmissible under other grounds, which was the case here, contained in section 212A of the act, and if the service wishes to pursue such additional grounds of inadmissibility, the alien shall be detained and referred for removal hearing before an immigration judge pursuant to 235B2 and 240 of that. And if you note, in this case, because he was charged with the third ground of inadmissibility, the fact that he had been previously placed in expedited removal, their service then had no choice, I mean, the immigration officials had no choice under these regulatory provisions, except then, the third time, to place him in removal. That's the reason for the difference in the treatment. However, this is not part of the record, nor does it have to be part of this record. The Petitioner's counsel is still trying to argue the expedited removal, which this Court has no jurisdiction over. He's saying that there should be the forms should be part of this record.  Well, as I understand your argument, it is simply because this is a motion to reopen that we have to assume the underlying validity of the decision, other than insofar as the agency didn't reopen. Is that your point? No, as far as the, Judge Grave, as far as the fact that he was placed in expedited removal, I call attention to the references in the Administrative Record at page 196 of the Administrative Record wherein Petitioner's notice of appeals to the Board. He said, quote, prior to the expedited removal of July 4th, 2002, I had already completed the minimum 10 years of continuous physical presence as required by law. Again, on AR-313, the I-213, the record of deportable inadmissible alien, the immigration officer stated, quote, Vallejo admitted to having been ordered removed from the United States on two previous occasions. Again, at page 201 of the Administrative Record. In the immigration judge's decision, the immigration judge said, quote, during the course of these proceedings responded through counsel, admitted the truth of the factual allegations contained in the notice to appear, and conceded removability on the basis of the charges set forth. And again, on AR-211, in the hearing transcript, where we note that the, it was stated that initially through counsel, Petitioner admitting allegations 4 and 5, but denying 6, 7, and 8, conceding removability under 212A7 charge, but denying the other two charges. But then see page 214 to 215 of the Administrative Record, in the part of the hearing transcript, where it says all factual allegations are admitted and removability conceded on all charges. Counsel, your time has expired, and I believe we understand the government's position. Thank you very much. Mr. Varga, you have some time remaining for rebuttal. Your Honor, with regard to the nature of Mr. Vallejo's removal, he's, what is indicated in the record is that his attorney, through counsel, made an admission on his behalf. But in his own declaration, he explains that he didn't understand. He said he would never have accepted administrative voluntary departure or expedited removal. And there's, Mr. Vallejo is not, he's not an attorney. And even the BIA itself, in its denial, they called it an administrative voluntary departure. The reason for this ambiguity is because it's not in the record. There's not such a record for the first two occasions. Now, the government's counsel is saying there doesn't have to be. I don't see how it could be deemed sufficient to end 12 years of physical presence, which Congress has legislated. But the years of presence, as I understand it, it is measured from the date of the entry, is that correct? It's from the date of entry is when the clock begins. So for him, it was 1989 or 1990. And it ends with the issuance of a notice to appear, which was July 8, 2002. That was the third time. That was when it statutorily ends his continuous physical presence. Those two incidents before are not documented. What you have before you is an NTA issued July 8, 2002. That ended his physical presence. And less than a month later, he submitted evidence showing that from that point 10 years back, in fact, 12 years back, he's been continuously present in the United States. Thank you, counsel. Your time has expired as well. We appreciate the arguments of both parties. The case just argued is submitted. Thank you.
judges: T. Nelson, Graber, Ikuta